Yes, Your Honor, may it please the Court, I'm Edward Robbins, I'm the lawyer for the taxpayer Michael Napoliello. Can I reserve two minutes, please? Yes, you may. Watch your time. Thank you. I will. If it pleases the Court, I would like to spend my time, my allotted time, on the affected items statutory notice of deficiency issue, the first alternative issue that is flagged in the briefs. The second issue, which is an issue that I have argued to the Eighth Circuit, the D.C. Circuit, and the tax court, and lost in all three courts, I'm going to kind of set that aside, not that I'm conceding it. And if this Court wants to revisit it and go against those three other courts, I'll be grateful for that. But I'm going to concentrate on the live issue here, which is the affected items statutory notice of deficiency. Before you get into what you want to say, let me just comment on what seemed to me at least a paradox, but perhaps more than a paradox, contradictory. You bring a petition in the tax court, and you tell us there's no jurisdiction in the tax court. Correct. How can you maintain that you've sought jurisdiction there, but you say there is no jurisdiction? Yes. How do you reconcile those statements? Normally, that is not an unusual circumstance in the tax court. And that's because the tax court's jurisdiction is strictly a function of a valid statutory notice of deficiency. All right. But you know that when you bring the petition. Correct. So why do you bring it there? Bring it, Your Honor, to get it dismissed. I'm looking for an order dismissing the case for lack of jurisdiction on the grounds that there is no valid statutory notice of deficiency. Well, it's a very funny way to treat a court. No, it is kind of odd, and it's unique to the tax court as far as I know, but you do it all the time. Most commonly, you do it in a situation where they issue it to the wrong address. You make an allegation that there is jurisdiction. You know there is no jurisdiction. That is a self-contradictory position. Well, you say it's practice. It may be a bad practice. Now, I want to ask you another question. You're representing a taxpayer who said he was in a partnership. Now you say, well, it was a sham partnership, so he won't think about it. Okay. Let me address that in a second. The court always has jurisdiction to determine if it has jurisdiction. And so I think that answers the earlier question. No, it does not answer it. But you allege there is jurisdiction. There's jurisdiction to determine jurisdiction. And you know there is none. That's a self-contradictory allegation. I respectfully disagree, Your Honor. Well, you'll see what we think. Okay. In other words, you filed in the tax court to get an order that the tax court doesn't have jurisdiction. Right. Why would you do that? It's done all the time, Your Honor, when there's a bad statutory notice of deficiency. That's how you resolve the issue of a bad statutory notice of deficiency. You bring a petition off the statutory notice of deficiency, and then you move to dismiss your own petition on the grounds that there's no jurisdiction because the statutory notice of deficiency is bad. And if you're successful with that argument, you get an order from the tax court saying the matter is dismissed because there's no valid statutory notice of deficiency. Tell me if I understand. So you're saying the tax court doesn't have jurisdiction. It should have been corrected by the IRS performing some kind of computational adjustment. Correct. But hasn't the statute run on that now? Yes. Okay. That's the point, Your Honor. So could that be a reason for filing in the tax court? Let me explain what the end game is here, in my view, if we prevail. If we prevail, the tax court case will be dismissed for lack of jurisdiction on the grounds that there was no valid statutory notice of deficiency. There are dozens of cases on record that follow that procedure, so this is not anything special. Once that's done, the only thing keeping the assessment statute open right now when the tax has not yet been assessed, the only thing keeping the assessment statute open right now is the statutory notice of deficiency. Once the statutory notice of deficiency is knocked out, the IRS can't assess, and the case is over. And Mr. Napoliello will have to pay nothing. That's the end game if we're successful. And on this jurisdiction-determined jurisdiction, this isn't anything new. I didn't make this up. I mean, you can find a dozen cases at least in the tax court where this is done all the time. And it is unique to the tax court as far as I know. A few points to make on the procedure that Judge Wardlaw, you just pointed out. After the TEFRA proceeding, which is initiated by the IRS issuing what's called an FPA, a Notice of Final Partnership Administrative Adjustment, commonly called an FPA. They issue the FPA. It's either litigated or, as here, defaulted. Based on the litigation or, as here, the default, everything in that FPA is conclusively determined if it is defaulted. So the starting point for the analysis here is to look at the FPA and see what the IRS knew or what it, as a legal matter, was entitled to take as conclusively determined. Everything in that FPA, everything in the explanation of adjustments, every numerical adjustment on that piece of paper is now conclusively determined in favor of the government. There is enough information in that FPA to do the tax calculation and do a summary assessment. They didn't do that here. Instead, they conducted an examination. They talked to the taxpayer. How do we know that? Because if you look at the Statutory Notice of Deficiency, which is in the record, the affected item Statutory Notice of Deficiency, they talk about the examination. They talk about discussions with the taxpayer. And in that Statutory Notice of Deficiency, they do a very thorough and complete calculation of the tax. Well, they should have assessed it. That's what they're supposed to do. They're supposed to do a summary assessment after the TEFR proceeding. That's the whole point of TEFR. The whole point of TEFR was to expedite things and to streamline things and to get rid of collateral tax court or tax matters at the individual taxpayer level. TEFR was designed to consolidate everything around the partnership. The default procedure for the IRS certainly is, after the TEFR proceeding, they look at what they've got. They can talk to the taxpayer if they want. They can conduct an examination if they want. They marshal their facts and they do an assessment. And they have one year and 150 days from the end of the TEFR proceeding to do that. They've got plenty of time. They need more time. They can get a consent. There is no reason in this case and no reason in 99 percent of the cases to do an affected item Statutory Notice of Deficiency. The only reason to do an affected item Statutory Notice of Deficiency is if there's something happening at the partner level that they can't figure out, such as state of mind. The taxpayer is not going to tell them what a state of mind is. They probably have to do a Statutory Notice of Deficiency to get to the bottom of that. But if the court looks in this case, am I eroding into my two minutes or do I have two minutes left? You are eroding your two minutes. I'm going to stay with it. It sounds like we'll abort you. Yeah. Why not? If the court looks at the stipulation of facts, the calculation is in there. The party stipulated to it. The court looks at the tax court's decision. The tax court judge did the calculation. The court looks at the Statutory Notice of Deficiency. The calculation is right there. Why did we need a Statutory Notice of Deficiency? The answer is we didn't. There was no reason to do that. They blew it, and as a result, they've blown the statute of limitations on assessment. And as a final comment, as I'm running out of time here, nobody disputes the fact that it's either one or the other. Government doesn't get the option. Only one selection is right. You either correctly do a summary assessment, computational adjustment, or you do an affected item, Statutory Notice of Deficiency. The government doesn't have the discretion to pick one, and they're okay no matter what they pick. Can I ask you a question, and you can go over a little bit on your time to answer this? How do you distinguish the Desmet case, which seems to allow this procedure? I have a lot of difficulty distinguishing the Desmet case, because as far as I'm concerned, the Desmet case was wrong. It was a result-oriented outcome where they're picking on items that didn't need to be picked on. They didn't need to go find that stuff. They had that information, and they certainly have it in this case. They certainly have it in this case. They've got all the information. They've got the basis. They've got the holding period. They've got the amount of loss. They've got everything they need to calculate. And if you have any doubt about that, look at the Statutory Notice of Deficiency. It's a very elaborate, very complete, very professional job of doing the tax calculation. They're done. Assess it. I think I'm over my time. If anybody has any questions. So your argument is that the Desmet case was wrongly decided, is that it? Well, I think it's a yes. It's wrongly decided in that it's picking on the specific items. Well, you needed to find out what his holding period was. You needed to find out what his basis was. No, you don't. Certainly don't in this case, because in this case, we know what they are. But I suspect, I'm confident the IRS and Desmet knew those things, too. They're just saying, oh, we have to do this. They're just making up issues to justify the Statutory Notice of Deficiency. No, you don't need that. They had it. And if they're off a little bit, this is important. If they can't tell whether it's a $10,000 basis or a $9,999 basis, that doesn't mean they need to do a Statutory Notice of Deficiency to pick up the other dollar. They just go with the number that most protects the government. And if the taxpayer doesn't like that, they can sue for a refund to get the dollar back, assuming that the government's wrong. So Desmet, I look at Desmet as a result-oriented case, helping out the government. And I submit to you here, we have that information in the record, as I pointed out. And I would also have to say that the Court should be aware, if I may, 10 seconds, there's an overarching administrative problem here that you need to worry about. The government's on both sides of this issue. Somebody like me is going to be here in a year arguing the government's side for the taxpayer. Because the government is doing, sometimes they do stat notices, sometimes they do summary assessments. And as I pointed out in my reply brief, sometimes they do both. And the reason they do both is they can't figure out what the answer is. So I just point that out, that there is going to be a problem here for the government, because they're on both sides of the issue. All right. Well, thank you for that. Thank you. Joan Oppenheimer for the Commissioner. There are two types of affected items. The type of affected item that can be assessed directly by a computational adjustment, and the assessment item that cannot be directly assessed and that needs to be determined at the partner level by an affected item notice of deficiency. This case is the latter type of case, and the tax court's decision is correct. I think perhaps it will become clearer if I contrast this with a situation where the stock was sold at the partnership level. Suppose, for example, instead of distributing the stock, the stock was sold at a partnership level, and the partnership claimed a very high basis that was disallowed in the FPA. And as here, the FPA wasn't challenged and became final. Then what you would have is the whole thing could be assessed by computational adjustment. The amount of loss on the sale of the securities would be determined by the partnership proceeding. So then all the commissioner would have to do is multiply the taxpayer's proportionate share of the partnership interest, which is 88 point something, by the loss that would be determined. And so computational adjustment would go out and determine that, and you wouldn't need any partner level determinations. But here, that is not what happened. The critical transaction, which is the sale of stock distributed by the partnership to the partner, occurred at the partner level. The partner then proceeds to sell the stock. There's nothing in the FPA that discloses the amount that he sold it for, what the associated commissions and costs of the sale were, what the individual taxpayer's basis in the stock, what his holding period for the stock was, whether this was a transaction entered into for profit, whether any loss would be allowable. Now, to say, well, the IRS has all this stuff in its records, well, that is true in every case where a notice of deficiency is issued. If all the IRS had to do was look in its files to determine the facts, we would never have a trial in any tax court case. And you would have taxpayers yelling and screaming about denial of due process, because all the IRS has to do is look in its files to find out basis and sales price and identity of securities. But this is a country that's dedicated to the rule of law. So when the IRS disallows a loss or reduces a loss, it sends an affected item notice of deficiency, and taxpayers have the right to go to court and challenge it. There is not one single thing that is needed to be determined. There's very little that needed to be determined that was actually determined in the partnership proceeding. First of all, the sales price. The sales price wasn't determined in the partnership proceeding because the partnership didn't sell the stock. The basis of the stock wasn't determined in the partnership proceeding either, because the basis of the stock depends on a number of things that are unique to any individual partner. For example, first it depends on its capital contributions. That's the initial starting point of basis. Then the basis takes into account distributions by the partnership, losses of the partnership. If there are five partners, each could have a different basis in the stock. If the partnership distributes its stock proportionately among five different partners, all of whom withdraw, each of them could have a different basis. The holding period is not determined in the partnership proceeding. The statute says the holding period of stock distributed by a partnership includes the partnership's holding period, but of course the partner had no obligation to ever sell the stock. If he sold the stock, he could have held it for a year. He could have held it for a day. He could have held it for three years. That, too, is an individual partner-level determination. Then the question of whether any loss is allowable is an individual partner-level determination. It depends on whether the transaction was entered into for profit. Another factor is the stock that was sold. Just because the partnership distributed stock doesn't mean that the stock that was sold was necessarily identical to the stock that was distributed. In fact, the taxpayer had in his personal portfolio some stock of the companies that he sold here. So there were many determinations that were individual to this particular partner that could only be determined in a partner-level proceeding. And the Desmet case, which Post and Counsel admits is on all fours, got it right when it said that this had to be done by effective item notice of deficiency and could not be done by a computational adjustment because this is a transaction that occurred at the partner level and not at the partnership level. So it seemed to me that everybody, including Mr. Napoliello, agreed that at the partnership level it was a sham partnership and that there was nothing really to be determined there. And that's why you proceeded to the partnership level, that there was a sham partnership series of transactions. And that's why you proceeded to the partner level in this case, why you went and examined Mr. Napoliano's. Well, I don't think he concedes that. He concedes that the partnership was a sham, but his position was that we had all the information and the files we needed and we could have... But no one stepped forward to dispute that the partnership was a sham? That's correct. It was conceded. Okay. So then your argument is that you were required then to go examine at the partner level to find out what really was going on here and how much money was really subject to taxation. Well, our position is that since the sale occurred at the partner level, all the relevant items were affected items. An affected item is not a partnership item. It's affected by a partnership item. And these were affected items that could not be determined without a notice of deficiency because they required individual partner level determinations. In other words, the situation would be very different if the partnership had sold the securities. Were there any other partners actually involved in this partnership? That certainly doesn't appear on the record. There must have been because MN Trading was only an 88% partner, so there must have been another partner, but that is not mentioned in the record to my recollection. And so there was he withdrew from the partnership and he received a cash distribution and also a stock distribution. In response to Mr. Robbins' argument about government inconsistency, I think that is not really correct. In his reply brief he gives an example of what's going on in another case that is factually distinguishable from this case. In the Thompson case, which he talks about in his reply brief, Thompson received a cash distribution. He did not receive a stock distribution, so therefore he didn't have a stock sale and all these individual partner level determinations that are necessary here. And it is also irrelevant what position the government is taking in other cases. What is relevant is whether the tax court's decision in this case is correct. The Jesmet case is on all fours. It is correct and it's our position that the tax court decision below was correct and should be affirmed. Thank you. All right, thank you, counsel. This case will be submitted.
judges: Korman, Noonan, Wardlaw